MRM
F.# 2020R006902

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

RAMI SAAB,
    also known as "Rami Hasan,"

               Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - X

**TO BE FILED UNDER SEAL**
COMPLAINT AND AFFIDAVIT IN SUPPORT OF APPLICATION FOR AN ARREST WARRANT

(18 U.S.C. §§ 1343, 2 and 3551 et seq.)

Case No. 22-MJ-703

EASTERN DISTRICT OF NEW YORK, SS:

        MATTHEW AMMANN, being duly sworn, affirms and states that he is a Special Agent with the Internal Revenue Service ("IRS"), duly appointed according to law and acting as such.

        In or about and between June 2020 and December 2021, within the Eastern District of New York and elsewhere, the defendant RAMI SAAB, also known as "Rami Hasan," together with others, did knowingly and intentionally devise a scheme or artifice to defraud the United States Small Business Administration (the "SBA"), in order to obtain money and property from the SBA, to wit, proceeds of forgivable loans under the Coronavirus Aid, Relief, and Economic Security ("CARES") Act, by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures and sounds, to wit, an electronic transmission of

fraudulent Paycheck Protection Program (the "PPP") loan applications and falsified supporting documents.

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

The source of your affiant's information and the grounds for his belief are as follows:[1]

1. I have been a Special Agent with the IRS for approximately fifteen years. I am currently assigned to an IRS group that investigates financial crimes. As a Special Agent, I have investigated numerous matters during the course of which I have conducted physical and electronic surveillance, interviewed witnesses, executed court-authorized search warrants and used other investigative techniques to secure relevant information regarding a variety of crimes.

2. I have personally participated in the investigation of fraud by the defendant RAMI SAAB, also known as "Rami Hasan," as discussed below. I am familiar with the facts and circumstances set forth below from my personal review of records, documents and other physical evidence obtained during this investigation, and from communications and information provided to me by fellow agents and other government personnel with knowledge related to this investigation. Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I learned from other law enforcement agents.

---

[1] Because the purpose of this Complaint is to set forth only those facts necessary to establish probable cause to arrest the defendant RAMI SAAB, also known as "Rami Hasan," I have not described all the relevant facts and circumstances of which I am aware.

I. <u>The Paycheck Protection Program</u>

At all times relevant to this Complaint, unless otherwise indicated:

3. The CARES Act was a federal law enacted on or about March 29, 2020 to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses through the PPP. On or about April 24, 2020, $310 billion in additional PPP funding was authorized by Congress.

4. The PPP allowed qualifying small businesses and other organizations to receive unsecured loans on favorable terms. Recipient businesses were obligated to use PPP loan proceeds for certain specified expenses, including payroll costs, interest on mortgages, rent and utilities. The PPP provided for forgiveness of the loan principal and interest if recipient businesses spent the proceeds on these specified expenses within a limited time period and used a certain percentage for payroll costs.

5. The PPP was overseen by the SBA, which had authority over all loans. Individual PPP loans, however, were issued by approved private lenders who received and processed PPP applications and supporting documentation, and then, following SBA approval, made loans using the lenders' own funds.

6. The amount of PPP funds a business could receive was determined by the number of employees it employed and its average payroll costs for a period of 2.5 months. Businesses that applied for a PPP loan were required to provide documentation, such as Internal Revenue Service (the "IRS") Form W-3, to confirm that they had in the past paid employees the compensation listed on the application.

II. <u>The Fraudulent Scheme</u>

7. The defendant RAMI SAAB, also known as "Rami Hasan," was a resident of Glen Cove, New York.

8. On or about June 13, 2020, an online application containing fraudulent statements was submitted on behalf of Goodstart LLC ("Goodstart") to a PPP lending institution ("PPP Lender-1") for a PPP loan in the amount of $164,720 (the "Goodstart Application"). The Goodstart Application and supporting documents provided with the application represented, among other things, that Goodstart (1) had an annual payroll of $790,656 per 2019 IRS Form 940, (2) gross receipts of $2,498,255 per a 2019 IRS Form 1040 C, and (3) 2020 first quarter wages paid of $155,425 per a 2020 IRS Form 941. The contact information provided for Goodstart Application included, <u>inter alia</u>, the borrower name of Farhad Shakeri,[2] the address provided was a residential address on Sea Cliff Avenue in Glen Cove, New York (the "Glen Cove Residence"), the phone number 516-602-9121 (the "9121 number"), and email address farhadshakeri1973@gmail.com.

9. The Goodstart Application included a certification that the information provided therein and all supporting documents and forms were "true and accurate," and an acknowledgment that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under federal law.

10. On or about June 16, 2020, on the basis of the representations made in the Goodstart Application, PPP Lender-1 issued a PPP loan to Goodstart in the amount of $164,720. The promissory note for the loan was purportedly electronically signed by Farhad Shakeri on or

---

[2]  Information obtained from the New York State Department of Criminal Justice Services indicated that Farhad Shakeri, with a date of birth of September 26, 1973, was deported from the United States to Afghanistan on September 23, 2008.

about June 16, 2020. The loan proceeds were disbursed to a bank account held in the name of Goodstart on or about June 17, 2020. On June 16, 2020, the day prior to receipt of the loan proceeds, the Goodstart account had a balance of approximately $1,291.

11. Between June 17, 2020, the date of the loan's disbursement, and June 30, 2020, all PPP funds disbursed via cash ATM withdrawal and/or checks paid to other companies which were later determined to be shell companies that also received PPP loans and transferred PPP funds between one another. Records received for the Goodstart account do not show any of the disbursed funds being used on payroll or legitimate business expenses.

12. Based on my review of correspondence with the IRS, the filings submitted in connection with the Goodstart Application were not genuine, as no such filings existed. Indeed, the IRS was not able to locate any filings relating to Goodstart.

13. Further, between on or about June 17, 2020 and June 29, 2020, various Bank of America ATM cameras captured video of RAMI SAAB making the cash withdrawals of PPP funds from the Goodstart account.

14. On or about February 3, 2021, an online application containing fraudulent statements was submitted on behalf of Good Start Construction LLC ("Good Start Construction") to a PPP lending institution ("PPP Lender-2") for a PPP loan in the amount of $903,444 (the "Good Start Construction Application"). The Good Start Construction Application and supporting documents provided with the application represented, among other things, that Good Start Construction (1) had an annual payroll of $4,336,532 per 2019 IRS Form 940 and (2) gross receipts of $11,934,227 per a 2019 IRS Form 1065. The contact information provided for the Good Start Construction Application included, inter alia, the borrower name of Farhad Shakeri, the address 1825 Steinway Street, Astoria, New York, the 9121 number, and

email address farhadshakeri1973@gmail.com. The Good Start Construction Application was submitted to the bank via an electronic device using IP 67.250.163.226 (the "226 IP address").

15. The Good Start Construction Application included a certification that the information provided therein and all supporting documents and forms were "true and accurate," and an acknowledgment that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under federal law.

16. On or about February 3, 2021, on the basis of the representations made in the Good Start Construction Application, PPP Lender-2 issued a PPP loan to Good Start Construction in the amount of $903,444. The promissory note for the loan was purportedly electronically signed by Farhad Shakeri on or about February 3, 2021. The loan proceeds were disbursed to a bank account held in the name of Good Start Construction on or about February 22, 2021. On January 29, 2021, less than one month prior to receipt of the loan proceeds, the Good Start Construction account had a balance of approximately $100. The Good Start Construction account itself had only been opened one week prior to that.

17. Between February 22, 2021, the date of the loan's disbursement, and March 17, 2021, all PPP funds were disbursed via cash ATM withdrawal and/or checks paid to other companies which were later determined to be shell companies that also received PPP loans and transferred PPP funds between one another. Records received for the Good Start Construction account do not show any of the disbursed funds being used on payroll or legitimate business expenses.

18. Based on my review of correspondence with the IRS, the filings submitted in connection with the Good Start Construction Application were not genuine, as no such filings existed. Indeed, the IRS was not able to locate any filings relating to Good Start Construction.

19.     On or about March 18, 2021, an online application containing fraudulent statements was submitted on behalf of VIP Pluss Inc. ("VIP Pluss") to a PPP lending institution ("PPP Lender-3") for a PPP loan in the amount of $1,176,525 (the "VIP Pluss Application"). The VIP Pluss Application and supporting documents provided with the application represented, among other things, that VIP Pluss (1) had an annual payroll of $5,647,331 per 2020 IRS Form 940, (2) gross receipts of $14,905,378 per a 2020 IRS Form 1040-Schedule C, (3) wages paid of $1,478,500 per a 2020 IRS Form 941 - 3rd Quarter, and (4) wages paid of $1,478,500 per a 2020 IRS Form 941 – 4th Quarter.  The contact information provided for the VIP Pluss Application included, inter alia, the borrower name of Matthew Dye, the address 223 Glen Cove, Glen Cove, New York, the telephone number 585-705-6278, and email address vippluss1357@yahoo.com. The VIP Pluss Application was submitted to the bank via an electronic device using the 226 IP address.

20.     The VIP Pluss Application included a certification that the information provided therein and all supporting documents and forms were "true and accurate," and an acknowledgment that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under federal law.

21.     On or about March 18, 2021, on the basis of the representations made in the VIP Pluss Application, PPP Lender-3 issued a PPP loan to VIP Pluss in the amount of $1,176,525.  The promissory note for the loan was purportedly electronically signed by Mathew Dye on or about March 18, 2021.  The loan proceeds were disbursed to a bank account held in the name of VIP Pluss on or about May 3, 2021.  On April 30, 2021, less than one week prior to receipt of the loan proceeds, the VIP Pluss account had a balance of approximately less than one dollar.

8

22. Between May 3, 2021, the date of the loan's disbursement, and June 8, 2021, all PPP funds were disbursed via cash ATM withdrawal and/or checks paid to other companies which were later determined to be shell companies that also received PPP loans and transferred PPP funds between one another. Records received for the VIP Pluss account do not show any of the disbursed funds being used on payroll or legitimate business expenses.

23. Based on my review of correspondence with the IRS, the filings submitted in connection with the VIP Pluss Application were not genuine, as no such filings existed. Indeed, the IRS was not able to locate any filings relating to VIP Pluss.

24. On or about March 30, 2021, an online application containing fraudulent statements was submitted on behalf of Yaman Construction ("Yaman Construction") to a PPP lending institution ("PPP Lender-4") for a PPP loan in the amount of $483,651 (the "Yaman Construction Application"). The Yaman Construction Application and supporting documents provided with the application represented, among other things, that Yaman Construction (1) had an annual payroll of $2,211,900 per 2020 IRS Form 940, (2) net sales of $1,275,878 per a 2019 – 2nd Quarter Income Statement, (3) net sales of $113,201 per a 2020 – 2nd Quarter Income Statement, and (4) gross receipts of $5,095,513 per a 2019 IRS Form 1065. The contact information provided for the Yaman Construction Application included, inter alia, the borrower name of Fares Chahine, the address 10 Cedar Swamp Road, Suite 2, Glen Cove, New York, the telephone number 347-707-9534 (the "9534 number"), and email address yamanalmestrehi@gmail.com. The Yaman Construction Application was submitted to the bank via an electronic device using the 226 IP address.

25. The Yaman Construction Application included a certification that the information provided therein and all supporting documents and forms were "true and accurate,"

9

and an acknowledgment that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under federal law.

26. On or about March 30, 2021, on the basis of the representations made in the Yaman Construction Application, PPP Lender-4 issued a PPP loan to Yaman Construction in the amount of $483,651. The promissory note for the loan was purportedly electronically signed by Fares Chahine on or about March 30, 2021. The loan proceeds were disbursed to a bank account held in the name of Yaman Construction on or about April 2, 2021. On March 25, 2021, one week prior to receipt of the loan proceeds, the Yaman Construction account had a balance of approximately less than $82.

27. Between April 2, 2021, the date of the loan's disbursement, and June 9, 2021, all PPP funds were disbursed via cash ATM withdrawal and/or checks paid to other companies which were later determined to be shell companies that also received PPP loans and transferred PPP funds between one another. Records received for the Yaman Construction account do not show any of the disbursed funds being used on payroll or legitimate business expenses.

28. Based on my review of correspondence with the IRS, the filings submitted in connection with the Yaman Construction Application were not genuine, as no such filings existed. Indeed, the IRS was not able to locate any filings relating to Yaman Construction.

29. On or about May 7, 2021, an online application containing fraudulent statements was submitted on behalf of R&M Thera Inc. ("R&M Thera") to a PPP lending institution ("PPP Lender-5") for a PPP loan in the amount of $864,950 (the "R&M Thera Application"). The R&M Thera Application and supporting documents provided with the application represented, among other things, that R&M Thera (1) had an annual payroll of

$4,151,760 per 2020 IRS Form 940 and (2) gross receipts of $9,986,771 per 2020 IRS Form 1120. The contact information provided for the R&M Thera Application included, inter alia, the borrower name of Mohamed Farahat, the address 10105 Astoria Boulevard, East Elmhurst, New York, the telephone number 929-233-0014 (the "0014 number"), and email address nyc59karrots@gmail.com. The R&M Thera Application was submitted to the bank via an electronic device using the 226 IP address.

30. The R&M Thera Application included a certification that the information provided therein and all supporting documents and forms were "true and accurate," and an acknowledgment that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under federal law.

31. On or about May 7, 2021, on the basis of the representations made in the R&M Thera Application, PPP Lender-5 issued a PPP loan to R&M Thera in the amount of $864,950. The promissory note for the loan was purportedly electronically signed by Mohamed Farahat on or about May 7, 2021. The loan proceeds were disbursed to a bank account held in the name of R&M Thera on or about May 14, 2021. On May 13, 2021, one day prior to receipt of the loan proceeds, the R&M Thera account had a balance of approximately less than $12,900 dollar. This prior account balance was the result of funds obtained from the activity detailed above.

32. Between May 13, 2021, the date of the loan's disbursement, and May 27, 2021, all PPP funds were disbursed via cash ATM withdrawal and/or checks paid to other companies which were later determined to be shell companies that also received PPP loans and transferred PPP funds between one another. Records received for the R&M Thera Construction

account do not show any of the disbursed funds being used on payroll or legitimate business expenses.

33. Based on my review of correspondence with the IRS, the filings submitted in connection with the R&M Thera Application were not genuine, as no such filings existed. Indeed, the IRS was not able to locate any filings relating to R&M Thera.

34. On or about March 13, 2021, an online application containing fraudulent statements was submitted on behalf of Elmhurst Construction LLC ("Elmhurst Construction") to PPP lending institution ("PPP Lender-6") for a PPP loan in the amount of $460,812 (the "Elmhurst Construction Application"). The Elmhurst Construction Application and supporting documents provided with the application represented, among other things, that Elmhurst Construction (1) gross sales of $1,084,133 per a 2019 – 2nd Quarter Income Statement and (2) gross sales of $339,609 per a 2020 – 2nd Quarter Income Statement. The contact information provided for the Elmhurst Construction Application included, inter alia, the borrower name of Farhad Shakeri, the address provided was the Glen Cove Residence, the phone numbers provided were 9121 number and the 0014 number, and email address elmhurstconstruction123@yahoo.com. The Elmhurst Construction Application was submitted to the bank via an electronic device using the 226 IP address.

35. The Elmhurst Construction Application included a certification that the information provided therein and all supporting documents and forms were "true and accurate," and an acknowledgment that knowingly making a false statement to obtain a guaranteed loan from the SBA is punishable under federal law.

36. On or about March 25, 2021, an individual purporting to be Farhad Shakeri contacts PPP Lender-6 to check on the status of the Elmhurst Construction Application.

The call was recorded by PPP Lender-6. I have reviewed a copy of the recorded call.[3] During the call the representative from PPP Lender-6 requested the Social Security Number associated with the loan. The caller was unable to promptly provide the answer and needed approximately 30 seconds to provide the Social Security Number. Based upon records provided by PPP Lender-6, the call described above originated from the 9534 number. During the call, the number that the caller provided to the representative of PPP Lender-6 was the 9121 number. During the call, the caller provided the Glen Cove Residence as the residential address of the loan applicant.

37. Based on my review of correspondence with the IRS, the filings submitted in connection with the Elmhurst Construction Application were not genuine, as no such filings existed. Indeed, the IRS was not able to locate any filings relating to Elmhurst Construction.

38. On or about June 2, 2022, RAMI SAAB was encountered at John F. Kennedy International Airport, Queens, New York, after returning to the United States via a flight from Istanbul, Turkey. When encountered at the border cross, Customs and Border Patrol ("CBP") conducted an interview of SAAB. During that non-custodial interview, SAAB provided the following, inter alia, the following information: (1) he was returning home from a trip to Jordan to visit family; (2) he resides at the Glen Cove Residence; (3) his cell phone number is 917-324-1661 (the "1661 number"); (4) his email address is Rami.Saab@yahoo.com (the "SAAB email address"); and (5) he did not have plans to travel internationally in the near future.

---

[3] I have also had the opportunity to review a copy of a recorded interview between RAMI SAAB and Customs and Border Patrol (see paragraph 38 herein) and the voice on the recorded call claiming to be Shakeri sounds the same as SAAB during the recorded interview.

39. Thereafter, law enforcement submitted a subpoena to Apple seeking information for any iCloud accounts associated with the name RAMI SAAB, the 1661 number and the SAAB email account. On or about June 16, 2022, Apple provided law enforcement with a response to the above-referenced subpoena which revealed the following: there were three Apple iCloud accounts (collectively, the "iCloud Accounts") linked to the information submitted by law enforcement in the subpoena.

40. The first account provided by Apple (hereinafter "Account-1") had the 1661 number listed as its "day phone" for Account-1 and the SAAB email address as the email for Account-1. The "verified number" for Account-1 was the 9121 number. Additionally, the username for Account-1 was "Ra Sa."

41. The second account provided by Apple (hereinafter "Account-2") had the 1661 number listed as its "verified phone" for Account-2. Additionally, the "day number" for Account-2 was the 9534 number.

42. Additionally, the information provided by Apple for Account-1 and Account-2 included information referred to by Apple as the "Client IP NR."[4] The Client IP NR information for both Account-1 and Account-2 include the 226 IP address as an IP which the Account-1 and Account-2 have used in the past.

III. Conclusion

WHEREFORE, your affiant respectfully requests that an arrest warrant be issued for the defendant RAMI SAAB, also known as "Rami Hasan," so that he may be dealt with according to law. I further request that the Court order that this application, including the

---

[4] The Client IP NR, stands for client IP number, and according to Apple that is the IP address of the device from which user activity occurred.

affidavit and arrest warrant, be sealed until further order of the Court, except that it may be shared with the defendant and defense counsel following his arrest in connection with his initial presentment. Disclosure of this application and these orders would seriously jeopardize the ongoing investigation, as such disclosure would give the targets of the investigation an opportunity to destroy evidence, harm or threaten victims or other witnesses, change patterns of behavior, notify confederates or flee from or evade prosecution.

MATTHEW AMMANN
Special Agent, Internal Revenue Service

Sworn to before me this
29 day of June, 2022

THE HONORABLE ARLENE R. LINDSAY
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK